**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| DAMARCUS B. PATTERSON,<br><br>*Plaintiff,*<br><br>v.<br><br>NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>Serve: Scott V. Williams<br>200 North 3rd Street<br>Saint Charles, MO 63301<br><br>*Defendant.* | ) | Case No:<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S COMPLAINT**

COMES NOW Plaintiff Damarcus B. Patterson (hereinafter "Damarcus" or "Plaintiff") and, for his Complaint against the above Defendant, alleges as follows:

**Introduction**

1. In the United States, federal law mandates that regardless of a person's race, color, sex, ethnicity, religion, or national origin, they be treated equally and given equal opportunity in the workplace.

2. In spite of this clear mandate, Damarcus Patterson was discriminated against in the workplace because he is a black man. Because of his race, Damarcus was forced to feed spikes to a spike driving machine daily for months on end; a task that no other worker on his all-white crew had to do for anywhere near the same amount of time.

3. As a result of this assignment, Damarcus spent hours every day in a bent over position, walking on uneven rock ballast, and inhaling considerable amounts of dust.

**Jurisdiction, Venue, and Request for Jury Trial**

4. Plaintiff brings this action under 42 U.S.C. § 2000e, otherwise known as Title VII of the Civil Rights Act, and 42 U.S.C. § 1981 to redress the deprivation of his right to be free from race discrimination in the workplace. This court therefore has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because all events giving rise to this claim occurred in the Eastern District of Missouri.

6. Plaintiff demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure

**Parties**

7. Plaintiff is an individual, a citizen of the United States, and a resident of St. Louis City, Missouri.

8. Plaintiff is an employee as defined by Title VII and § 1981. At all times relevant herein, Plaintiff worked for Defendant Norfolk Southern as a track laborer at Norfolk Southern Luther Yard located at 7021 Hall St, St. Louis MO 63147.

9. Defendant Norfolk Southern Railway Company is a corporation incorporated in Virginia with its principal place of business in Atlanta, Georgia.

10. Defendant Norfolk Southern is an employer as defined by Title VII and § 1981.

**Procedural Background**

11. On May 20, 2026 Plaintiff timely filed a charge of race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and it is attached as Exhibit A.

12. On May 28, 2026, the EEOC found reasonable cause to believe violations of Title VII occurred and issued Plaintiff a Notice of Right to Sue. A true and correct copy of that Notice is attached as Exhibit B.

13. This Complaint has been filed within ninety (90) days of receipt of that Notice. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under Title VII.

**Facts**

14. Damarcus is a thirty-one year old black man.

15. Damarcus was hired by Defendant Norfolk Southern as a track laborer in February of 2024.

16. Damarcus was a model employee. He showed up to work on time, completed his tasks in a timely manner, helped other employees when needed, and remained respectful to his co-workers and supervisors.

17. At Norfolk Southern Luther Yard, Damarcus worked on a crew of track laborers. All of his crewmates were white men.

18. In April of 2025, a white crewmate on Damarcus's crew began complaining to others about feeding spikes. That same month he escalated his complaints to Foreman Chase Tippen.

19. Feeding spikes is no easy task. It requires an employee to follow a spike driving machine, which secures the steel rail to the wooden tie, along a railroad track and manually place the spikes into the feeder repeatedly.

20. In order to do this, an employee must remain in a bent over position while walking on uneven rock ballast for hundreds of yards. A spike driving machine also generates enormous amounts of dust because it is spiking through steel, wood, and rock ballast, powerfully and at a

high rate of speed. Thus, an employee both strains their body and breathes in considerable amounts of dust while performing this task

21. Because this is such a physically taxing and disfavored job, employees on Damarcus's crew would feed spikes for one month before rotating to another task.

22. After the white crewmate complained to Foreman Tippen about feeding spikes, the Foreman instructed Damarcus to begin feeding spikes.

23. Foreman Tippen supervises large crews of track workers and laborers and has the power to make tangible decisions such as removing workers from service and reassigning them to roles with significantly different responsibilities. Thus, Foreman Tippen is a supervisor as defined by Title VII.

24. Damarcus did as he was told. But no other crew member rotated into the position and took his place like they should have. Instead, Damarcus was forced to feed spikes for hours every day, from April 2025 until June 1st, 2025.

25. As a result of working this grueling assignment for months, Damarcus suffered frequent nosebleeds from inhaling dust generated by the machine.

26. After working on the spike driving machine for months, Damarcus reported these nosebleeds and the extended duration of his task assignment to Defendant Norfolk Southern's internal investigator Randy Pennington. Still, he was not taken off the spike feeding assignment.

27. In June 2025, Damarcus also began suffering from other physical injuries as a result of bending over for hours on end daily while working the spike feeder, including, but not limited to, synovitis and tenositis in his left ankle and foot, flat footedness in his left foot, and posterior tibial tendinitis in his left leg. As a result of these injuries, Damarcus is unable to raise his heels without pain and now requires surgery.

28. None of Damarcus's white co-workers were forced to feed spikes for months on end like Damarcus was. The only reason that Damarcus was assigned to this task for such an extended period of time was because he is a black man and because he was the only black man on the crew.

29. Damarcus filed an internal employment discrimination complaint on September 17, 2025.

30. Defendant Norfolk Southern assigned internal investigator Randy Pennington to the matter. When the investigation first started, Pennington stated that Damarcus's complaint had made an impact, and that his co-workers and supervisors were upset with him. Pennington also stated that the Foreman admitted to a behavior that Damarcus complained about.

31. Damarcus sent pictures of a nosebleed to Pennington and made efforts to meet with him and discuss the matter. But nothing came of the investigation, and Pennington eventually began to ignore Damarcus.

32. After being failed by Defendant Norfolk Southern, Damarcus contacted his union representative, Dustin Heiser, who told him to file a charge with the EEOC.

33. Damarcus received a right to sue letter from the EEOC on May 28, 2026, and is now initiating an action against Defendant Norfolk Southern to seek redress for the disparate treatment he was subjected to by it through Foreman Tippen.

## Federal Civil Rights Claims

## COUNT I

### Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (42. U.S.C. §§2000e et al.)

34. Plaintiff reincorporates all preceding paragraphs as though fully set forth herein.

35. At all times relevant herein, Foreman Tippen was an agent of Defendant, was acting as Plaintiff's supervisor, and had the power to take tangible employment actions.

36. Defendant has discriminated against Plaintiff in violation of Title VII, 42 U.S.C. § 2000(e)-2(a) by subjecting him to disparate treatment because of his race, *inter alia*, reassigning him to an undesirable and dangerous position.

37. Plaintiff is a member of a protected class on the basis of race. He is a black male.

38. Plaintiff, in all respects, was performing his job in a manner that was consistent with Defendant's legitimate business expectations.

39. Despite this, Defendant, acting through agents and employees, took adverse employment action against Plaintiff because of his race.

40. Defendant, acting through agents and employees, reassigned Plaintiff to an undesirable and dangerous position because of his race thus materially altering the terms and conditions of his employment with Defendant.

41. Plaintiff was assigned to work the spike feeding machine daily for months. No white employee on Plaintiff's crew was assigned to the same task.

42. Defendant knew, or should have known, that Damarcus was placed on the spike feeding tasks for months at a time and that this task placement was a result of disparate treatment.

43. As a result of Defendant's discriminatory conduct, Plaintiff has suffered physical injuries in the form of repeated nose bleeds from prolonged dust exposure and the above-described injuries to his left foot, ankle, and leg, which require surgery.

44. As a result of Defendant's discriminatory conduct, Plaintiff has suffered non-physical injuries including emotional distress and other consequential damages.

45. In the absence of Defendant's discrimination Plaintiff would not have suffered these injuries.

46. Defendants, acting through agents and employees, performed these acts with malice, fraud, oppression, and/or reckless indifference to the protected rights of Plaintiff. Plaintiff is thus also entitled to recover punitive damages.

47. Under 42 U.S.C. § 2000e-5(k), if Plaintiff is the prevailing party in this litigation, then he will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

WHEREFORE, Plaintiff prays for judgment under 42 U.S.C. § 2000e against Defendant for compensatory damages in a fair and reasonable amount, for punitive damages, for reasonable attorney's fees, for and non-taxable expenses, for costs, and Plaintiff prays for such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 2000e.

**COUNT II**

**Race Discrimination in Violation of 42. U.S.C. § 1981**

48. Plaintiff reincorporates all preceding paragraphs as though fully set forth herein.

49. At all times relevant herein, Foreman Tippen was an agent of Defendant, was acting as Plaintiff's supervisor, and had the power to take tangible employment actions.

50. Defendant has discriminated against Plaintiff in violation of 42 U.S.C. § 1981 by subjecting him to disparate treatment because of his race, *inter alia*, reassigning him to an undesirable and dangerous position.

51. Plaintiff is a member of a protected class on the basis of race. He is a black male.

52. Plaintiff, in all respects, was performing his job in a manner that was consistent with Defendant's legitimate business expectations.

53. Despite this, Defendant, acting through agents and employees, took adverse employment action against Plaintiff because of his race.

54. Defendant, acting through agents and employees, reassigned Plaintiff to an undesirable and dangerous position because of his race thus materially altering the terms and conditions of his employment with Defendant.

55. Plaintiff was assigned to work the spike feeding machine daily for months. No white employee on Plaintiff's crew was assigned to the same task.

56. Plaintiff would not have been assigned to work the spike feeding machine daily for months but for his race.

57. Defendant knew, or should have known, that Damarcus was placed on the spike feeding tasks for months at a time and that this task placement was a result of disparate treatment.

58. As a result of Defendant's discriminatory conduct, Plaintiff has suffered physical injuries in the form of repeated nose bleeds from prolonged dust exposure and the above-described injuries to his left foot, ankle, and leg, which require surgery.

59. As a result of Defendant's discriminatory conduct, Plaintiff has suffered non-physical injuries including emotional distress and other consequential damages.

60. In the absence of Defendant's discrimination Plaintiff would not have suffered these injuries.

61. Defendants, acting through agents and employees, performed these acts with malice, fraud, oppression, and/or reckless indifference to the protected rights of Plaintiff. Plaintiff is thus also entitled to recover punitive damages.

62. Under 42 U.S.C. § 1988, if Plaintiff is the prevailing party in this litigation, then he will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

WHEREFORE, Plaintiff prays for judgment under 42 U.S.C. § 1981 and § 1988 against Defendant for compensatory damages in a fair and reasonable amount, for punitive damages, for reasonable attorney's fees, for and non-taxable expenses, for costs, and Plaintiff prays for such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 1988.

Respectfully Submitted,

SWMW LAW, LLC

/s/ Patrick S. O'Brien
PATRICK S. O'BRIEN, MBE #27995
701 Market Street, Suite 1000
St. Louis, MO 63101
Telephone: (314) 480-5180
Facsimile: (314) 932-1566
Patrick.OBrien@swmwlaw.com

**ATTORNEYS FOR PLAINTIFF**